IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FRANCIS CHERRY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-13-1316 |
| | § | |
| UTMB, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER AND OPINION

Francis Cherry, a state inmate proceeding *pro se*, filed a section 1983 lawsuit against Elgene G. Mainous, D.D.S., and UTMB John Sealy Galveston Hospital alleging violations of his civil rights. Defendant UTMB filed a motion to dismiss (Docket Entry No. 10), to which plaintiff filed a response (Docket Entry No. 14). Defendant Mainous filed a motion for summary judgment, serving plaintiff a copy at his address of record (Docket Entry No. 18). Plaintiff did not file a response to the motion for summary judgment and has failed to contest or oppose the motion.

Based on its review of the motions, the response, the record, and the applicable law, the Court **GRANTS** the motion to dismiss (Docket Entry No. 10), **GRANTS** the motion for summary judgment (Docket Entry No. 18), and **DISMISSES** this lawsuit for the reasons that follow.

## I. BACKGROUND AND CLAIMS

On May 23, 2011, plaintiff underwent dental surgery at the TDC Oral Surgery Clinic at UTMB for the extraction of two bony impacted wisdom teeth. The first wisdom tooth was extracted without incident, but during removal of the second tooth, plaintiff's jaw was fractured. He was provided antibiotics and pain relief, and underwent surgery to repair the broken jaw on May 25, 2011. The fracture subsequently healed without complication.

In May of 2013, plaintiff filed the pending lawsuit against UTMB and Mainous, alleging that Mainous was deliberately indifferent to his serious medical needs by breaking his jaw during the extraction procedure. Plaintiff alleged that UTMB failed to exercise adequate supervision of its medical staff. He seeks monetary damages.

## II. DEFENDANT MAINOUS

In his motion for summary judgment, defendant Mainous states that he was not the oral surgeon who performed the procedure made the basis of plaintiff's lawsuit. Mainous states that a different oral surgeon performed the surgery on May 23, 2011, and that Mainous only examined and evaluated the fracture after it occurred. Mainous obtained an x-ray of the jaw, determined that it was fractured, and informed plaintiff that further surgery would be needed to repair the jaw. Plaintiff was placed in the UTMB holdover cell, given antibiotics and pain medication, and the surgical procedure was performed the next available day, May 25, 2011.

In his affidavit submitted in support of his motion for summary judgment, Mainous testifies, in relevant part, as follows:

> On 5/23/11, Mr. Cherry was referred to the TDC Oral Surgery Clinic at UTMB by his Unit dentist to evaluate him for bony impacted wisdom teeth[.] I was the faculty physician assigned to staff the TDC Oral Surgery Clinic on 5/23/11.
>
> Mr. Cherry was examined by the Oral Surgery resident, Michael Pampalon, D.D.S., who explained the findings and the possible risks, benefits and complications of third molar removal, as well as alternative treatments including no treatment. Panorex films were obtained that showed a full bony impacted [tooth] and a partial bony impacted [tooth]. The films and Dr. Pampalon's physical examination findings were presented to me and I agreed with his assessment and recommendation for surgical extraction of the two impacted wisdom teeth. Mr. Cherry agreed to and requested the surgical removal of his wisdom teeth and having been advised of the possible risks of the procedure, which included 'jaw fracture, displacement of teeth and teeth fragments, damage to adjacent teeth, tissue, or bone, pain, bleeding, etc.' consented to the procedure.
>
> At UTMB-Galveston, the Oral Surgery Division is assigned two days per week for elective operating room schedule (Wednesdays and Fridays). As Oral Surgery had no available operating rooms for that Wednesday, Mr. Cherry was advised that he would have to return to his unit and come back at a later date for the surgical procedure. Mr. Cherry expressed dissatisfaction with having to return to the unit and wanted the teeth removal performed that day. Dr. Pampalon discussed and explained to Mr. Cherry that the procedure could be performed under local anesthesia in the clinic setting, which is commonly done at our institution. Dr. Pampalon again explained the possible risks and benefits of the procedure, which are the same risks previously consented to without the potential complications of general anesthesia. Mr. Cherry was advised that this was an elective procedure and he requested that the tooth removal be performed on 5/23/11 in the clinical setting.
>
> After prepping the patient and providing local anesthesia, Dr. Pampalon proceeded with the extraction of [the first] tooth without complication. After removal of [the second] tooth, the socket was inspected and Dr. Pampalon noted that there was a fracture through the buccal and lingual plates. At this

3

point, Dr. Pampalon consulted me and I came to the clinic treatment room to examine and evaluate Mr. Cherry. I agreed with Dr. Pampalon's assessment and obtained Panorex films which confirmed a left angle fracture at the [tooth] extraction site. Although I had reviewed Mr. Cherry's films and discussed his case with Dr. Pampalon, I had no interaction or conversations with Mr. Cherry prior to the complication.

I explained to Mr. Cherry the complication and advised him that we would need to take him to the operating room to perform an open reduction and internal fixation of his left angle fracture. I explained to Mr. Cherry the procedure to be performed, as well as the risks and benefits, to which he consented. I was able to clear an opening on the Oral Surgery operating room schedule and Mr. Cherry was scheduled for the repair procedure on Wednesday, 5/25/11. Mr. Cherry was placed in TDC holdover and provided antibiotics and pain medications to alleviate his complaints.

\* \* \* \*

I have been practicing Oral Surgery for over forty years and have performed thousands of wisdom teeth removals[.] Mandibular fracture, especially in an adult patient, is a known complication of wisdom tooth extraction and this was explained to and consented to by Mr. Cherry prior to the performance of the procedure.

(Docket Entry No. 18, Exhibit A, pp. 1–5.)

As noted earlier by the Court, plaintiff did not respond to the motion for summary judgment and did not contest or otherwise controvert Mainous's factual assertions. Plaintiff presents no probative summary judgment evidence showing that Dr. Mainous performed the tooth extraction that resulted in his jaw fracture. To any extent plaintiff may argue that Mainous remains liable because he supervised or was otherwise responsible for the Oral Surgery Department, his argument fails. *See Cozzo v. Tangipahoa Parish Council–President*

*Gov't*, 279 F.3d 273, 286 (5th Cir. 2002) (holding that supervisory employees are not subject to *respondeat superior* liability under section 1983).

Plaintiff fails to meet his burden of proof to show that Mainous was deliberately indifferent to plaintiff's serious medical needs, and fails to establish that Mainous is liable for his damages under section 1983. Defendant Mainous is entitled to summary judgment dismissal of plaintiff's claims against him.

## III. DEFENDANT UTMB

Plaintiff claims in his complaint that UTMB failed to supervise its medical staff. Defendant UTMB maintains that plaintiff's claims must be dismissed because UTMB, an agency of Texas, is not a "person" for purposes of liability under section 1983, and is immune from liability as a state agency. Defendant's argument is correct, and plaintiff's claims must be dismissed. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71(1989); *see also Hyatt v. Sewell*, 197 F. App'x 370 (5th Cir. 2006). Moreover, absent any constitutional violation by defendant Mainous as UTMB medical staff, there can be no liability on the part of UTMB. *Id.* Plaintiff's response to UTMB's motion focuses on various state law statutes and definitions, and provides no legal or factual basis for holding UTMB liable under section 1983.

Defendant UTMB is entitled to dismissal of plaintiff's section 1983 claims against it.

## IV.  STATE LAW CLAIMS

Federal courts are courts of limited jurisdiction. They adjudicate claims arising from violations of federal law including the U.S. Constitution, claims in which diversity of the parties is present, and pendant state law claims over which the court may exercise supplemental jurisdiction. Since the Court has concluded that plaintiff's federal claims are subject to dismissal, no federal question remains before the Court. Although this fact alone does not divest the court of jurisdiction, in *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343 (1988), the Supreme Court stated that "in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." Moreover, the general rule in this circuit is to dismiss state claims when the federal claims they supplement are dismissed. *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992).

Because the Court has concluded that all of the federal claims asserted in this action must be dismissed, the Court declines to exercise supplemental jurisdiction over any negligence or other state law claims that plaintiff may be attempting to assert. See 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction). Accordingly, plaintiff's state law claims are dismissed without prejudice to being pursued in state court.

## V. CONCLUSION

Defendant Mainous's motion for summary judgment (Docket Entry No. 18) is **GRANTED**, and plaintiff's federal claims against Mainous are **DISMISSED WITH PREJUDICE**.

Defendant UTMB's motion to dismiss (Docket Entry No. 10) is **GRANTED**, and plaintiff's federal claims against UTMB are **DISMISSED WITH PREJUDICE**.

Plaintiff's state law claims, to the extent any have been raised in his complaint, are **DISMISSED WITHOUT PREJUDICE** to being pursued in state court.

Any and all other pending motions are **DENIED AS MOOT**.

**SIGNED** at Houston, Texas on the 8th day of July, 2014.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE